RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 4/5/10
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SAMMY MARK HUNTER, ET AL. | CIVIL ACTION NO. 08-963 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SAINT GOBAIN ABRASIVES, INC., ET AL. | MAG. JUDGE MARK HORNSBY |

RULING

This is a products liability action brought by Plaintiffs Sammy Mark Hunter ("Mr. Hunter") and Queenie May Turner Hunter (collectively "the Hunters") against manufacturers of a hand-held grinder, Henry Tools, Inc. ("Henry"); attached grinding wheel, Saint Gobain Abrasives, Inc. ("Saint Gobain"); and attached safety guard, American Guard Co., Inc. ("American").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 55] filed by Defendant American. American seeks dismissal of the Hunters' claims against it. The Hunters filed a response [Doc. No. 61], and American filed a reply [Doc. No. 65].

For the following reasons, American's Motion for Summary Judgment is DENIED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Hunter was an employee of James Machine Works, LLC ("JMW") from 1998 to 2003 and 2005 to 2007. His job was to assist in the fabrication of large industrial tanks and pressure vessels, which required him to use hand-held grinders to smooth and finish welds. While working for JMW on June 15, 2007, Mr. Hunter was injured while using a Model 560V hand-held grinder ("grinder") manufactured by Henry.

1

Other parts were attached to and sold with the grinder, including a grinding wheel manufactured by Saint Gobain and a safety guard manufactured by American. At the time the safety guard left American's control, it covered 210 degrees of the circumference of the grinding wheel. Sometime thereafter, but before Mr. Hunter was injured, the safety guard was modified to cover only 60 degrees of the circumference of the grinding wheel.

The Hunters allege that while Mr. Hunter was using the grinder, the grinding wheel broke into pieces and the grinder launched grinding wheel fragments in different directions. One of the grinding wheel fragments struck Mr. Hunter's left boot and injured his foot.

On June 12, 2008, the Hunters filed suit against Saint Gobain in state court for damages arising out of the incident. On July 8, 2008, the case was removed to this Court. Over the following year, the Hunters added Henry and American as defendants.[1]

On February 5, 2010, American filed a Motion for Summary Judgment. American asserts that Mr. Hunter's use or modification of the safety guard could not be reasonably anticipated.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions

---

[1] On September 22, 2008, JMW also joined this suit as an intervenor plaintiff. JMW alleges that it paid and continues to pay compensation and medical benefits to or on behalf of Mr. Hunter under the Louisiana Workers' Compensation Act and that it is a subrogee to the rights of Mr. Hunter in this suit.

of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Reasonably Anticipated Use, Alteration, or Modification

The Hunters allege in their petition that the safety guard was unreasonably dangerous because it was defective in design and/or lacked an adequate warning. American asserts that the safety guard was not unreasonably dangerous because the Hunters' claims rely on a characteristic of the safety guard that did not exist at the time the product left American's control and/or was not a reasonably anticipated modification of the safety guard. American also asserts that Mr. Hunter's use of the modified safety guard was not a reasonably anticipated use.

"The Louisiana Products Liability Act ("LPLA") establishes the exclusive theories of recovery against manufacturers for damage caused by their products." *Simon v. Am. Crescent Elevator Co.*, 99-2058 (La. App. 3 Cir. 4/26/00); 767 So.2d 64, 68. "In order to establish

manufacturer's liability under the LPLA, a claimant must show (1) damage, that (2) was proximately caused by (3) a characteristic of an unreasonably dangerous product during (4) a reasonably anticipated use of that product." *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing LA. REV. STAT. § 9:2800.54). However, if the plaintiff alleges a design defect or inadequate warning "[t]he characteristic of the product that renders it unreasonably dangerous . . . must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product." LA. REV. STAT. 28500.54(C).

The Hunters contend that, even if the safety guard was not modified, the grinding wheel fragment would have struck Mr. Hunter's foot. If true, the issue as to whether the modification of the safety guard was reasonably anticipated is moot. *Johnson v. Black & Decker U.S., Inc.*, 701 So.2d 1360, 1365 (La. App. 2 Cir. 1997). The Hunters offer the affidavit of their expert, Dr. Dale Anderson ("Anderson"). Anderson opines that the grinding wheel fragment that struck Mr. Hunter's boot was probably launched from the grinder below the plane of where an unmodified safety guard would have reached. American argues that Anderson's affidavit is not competent summary judgment-type evidence.

"The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." *First United Financial Corp. v. U.S. Fidelity & Guar. Co.*, 96 F.3d 135, 136-37 (5th Cir. 1996). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court set forth the role of the district courts as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), extended the *Daubert* standard to all experts and expert testimony.

Under Federal Rule of Evidence 702, amended after the *Kumho* decision, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if it (1) "[is] based upon sufficient facts or data, (2) . . . [is] the product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

The *Daubert* Court provided an illustrative list of factors that courts may use when evaluating the reliability of such testimony. 509 U.S. at 592-93. These factors include, but are not limited to, whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. *Id.* at 593-94. "[T]he Supreme Court emphasized that the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho*, 526 U.S. at 152).

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

American argues that Anderson is not a qualified expert because he lacks experience with grinders. However, Anderson's affidavit indicates that he has an extensive professional background in mechanical engineering and machinery. He earned a Ph.D. in mechanical engineering from Brigham Young University in 1984 and instructed courses in that field at Louisiana Tech University for over two decades. Anderson also has experience as a consultant in the field of machine function and safety analysis. The Court finds that Anderson is qualified to give the opinions stated in his affidavit.

American also argues that Anderson's affidavit should be excluded because Anderson does not include the data or information on which he bases his opinions or the methods used to derive them.[2] However, Anderson's affidavit indicates that he reviewed Mr. Hunter's deposition and inspected, photographed, and evaluated the scene of the accident and the grinder. His opinion on the directional flight path of the grinding wheel fragment is based on his evaluation of the scene of the accident and the grinder, and Mr. Hunter's positioning of the grinder in relation to his body. Furthermore, American has not shown how a theory as to where the grinding wheel fragment broke from the grinding wheel (interior or edge of the grinding wheel) is a necessary component to an opinion regarding the flight path of the grinding wheel fragments. The Court, therefore, finds that Anderson's affidavit satisfies Rule 702 and is competent summary judgment evidence.

---

[2]Specifically, American argues that Anderson's affidavit fails to mention the location of the work surface in relation to Mr. Hunter's left foot, how he determined the directional flight path of the grinding wheel fragment, and whether the grinding wheel fragment broke from the edge or the interior of the grinding wheel.

Anderson's affidavit creates a genuine issue of material fact as to whether an unmodified safety guard could have prevented Mr. Hunter's injury. Therefore, at this time, the Court need not decide whether modification of the safety guard was reasonably anticipated.

## III. CONCLUSION

For the foregoing reasons, American's Motion for Summary Judgment is DENIED.

MONROE, LOUISIANA, this 3 day of April, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE